**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4132-23

ABIODUN OLANIWUN,

    Plaintiff-Appellant,

v.

THE LAW OFFICES OF
GEOFFREY T. MOTT, PC,

    Defendant-Respondent.

_____

Submitted October 16, 2025 – Decided October 29, 2025

Before Judges Mawla and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. DC-001181-24.

Abiodun Olaniwun, appellant pro se.

The Law Offices of Geoffrey T. Mott, PC, respondent pro se (Geoffrey T. Mott, on the brief).

PER CURIAM

Plaintiff Abiodun Olaniwun appeals from the Special Civil Part's August 1, 2024 order dismissing his complaint with prejudice against defendant The Law Offices of Geoffrey T. Mott, PC following a bench trial. We affirm.

I.

In October 2023, plaintiff contacted defendant seeking legal representation regarding a potential appeal for an underlying case. After speaking with Geoffrey Mott on the phone about his case, plaintiff agreed to pay defendant a retainer fee of $4,500, over two installments, and the cost of the trial transcripts. On October 31, plaintiff paid the first installment on the retainer fee, authorizing $2,250 to be charged to his credit card. The next day, defendant emailed plaintiff a retainer agreement for him to sign.[1] However, plaintiff never signed the retainer agreement.

On November 10, plaintiff paid a $1,500 deposit to defendant for the firm to obtain the trial transcripts. On November 14, plaintiff received an email from defendant with a copy of his transcript attached. On November 16, plaintiff paid defendant the $927.86 remaining balance on the trial transcripts, authorizing that charge to another credit card.

---

[1] Plaintiff disputed receiving this agreement at trial.

A-4132-23

After reviewing plaintiff's case and the trial transcripts, defendant determined plaintiff had limited grounds for a successful appeal. In a November 17 email, defendant explained to plaintiff it could not just re-file plaintiff's complaint because the trial court had dismissed his case with prejudice at the conclusion of the trial. Defendant also explained the court's decision, outlining the court's credibility determinations and plaintiff's burden of proof. While it declined to represent plaintiff in his appeal, defendant informed plaintiff he must file his notice of appeal by December 2, 2023 if he wished to pursue his appeal on his own or with other counsel. Plaintiff did not respond to this email.

After not receiving a response from plaintiff, defendant sent follow-up emails to him on November 27 and November 29. Defendant also claims it left plaintiff a voicemail on November 29, reminding him of the deadline to file his appeal.

Thereafter, plaintiff initiated "chargebacks" for the three credit card payments he made to defendant. In January 2024, plaintiff also filed a breach of contract complaint against defendant seeking $20,000 in damages and accusing defendant of charging him for services not rendered, contacting his

A-4132-23

bank without his permission to fight his chargebacks, and not providing him with a copy of his trial transcript.[2]

On January 24, defendant moved to dismiss plaintiff's complaint, arguing plaintiff failed to state a claim upon which relief could be granted, as the complaint did not establish a breach of contract. On January 29, plaintiff opposed the motion. There is no indication in the record the court ever ruled on defendant's motion.[3]

A bench trial was conducted on August 1, 2024. The parties disputed whether plaintiff's chargebacks were successful, whether defendant retained any funds, and if the payments were reasonable, given the absence of a signed retainer agreement. The parties' email correspondence, receipts, and bank statements were produced and admitted into evidence.

Plaintiff testified he understood he would pay defendant an initial retainer of $2,250 and pay for the cost of the transcript, but maintained there was no

---

[2] Plaintiff calculated the $20,000 figure based on the accruing interest on his credit cards and the fact he could not afford to hire another firm to represent him in his appeal after paying defendant.

[3] Plaintiff claims "the case stay[ed] active after[] [his objection to defendant's motion to dismiss], and [was] scheduled for trial. . . . [D]efendant did not appear for the trial . . . , which . . . subjected the matter []to a default." Plaintiff further avers he subsequently requested a proof hearing, to which defendant objected, and the matter was scheduled for a bench trial.

A-4132-23

signed retainer agreement or binding contract between the parties. He argued defendant should have refunded his payments after it declined to represent him on his appeal. He further claimed defendant did not return the transcript to him. Plaintiff testified, while he initiated chargebacks on all three payments, the chargebacks were unsuccessful, and he continued to owe his banks for all three payments. During cross-examination, plaintiff admitted he agreed to retain the firm during his conversation with Geoffrey Mott. He also admitted he filed an appeal, self-represented, for the underlying case by the December 2, 2023 deadline.

Defendant introduced evidence showing it sent the retainer agreement to plaintiff's email address and an itemized bill for the legal services it rendered. Christopher D. Ginelli, Esq. testified on defendant's behalf about the process of ordering plaintiff's transcripts, introduced emails showing plaintiff's consent and authorization for each of the three payments he made, and the reasonableness of the charges for its legal services. He contended, as a result of plaintiff's chargebacks, defendant had not been compensated for the legal services and transcripts costs it expended on plaintiff's behalf.[4]

---

[4] Defendant conceded, however, the account to which plaintiff made his payments was no longer open as it had been closed sometime in November 2023.

During trial, defendant moved to dismiss plaintiff's complaint, arguing plaintiff failed to establish a cause of action because the evidence showed there was a clear agreement between the parties for legal services. The trial court denied defendant's motion, finding plaintiff paid a total of $4,677.86 to defendant over three separate payments, which defendant acknowledged receiving. Contrary to defendant's assertion, the court declined to find the payments were reversed.

Defendant subsequently argued in support of a "counterclaim" for its legal fees associated with the matter.[5] Defendant sought to recover $5,012.86, which it claimed represented its uncompensated hourly work plus the transcript costs it advanced.

Ultimately, the court found plaintiff paid defendant a total of $4,677.86 over three separate payments, and defendant in fact received those payments. Although the court acknowledged defendant's claim that plaintiff's payments were taken out of its account after plaintiff reversed the payments, it found the documents submitted by defendant showed plaintiff's payments were deposited

---

[5] Defendant claims it "filed a counterclaim for unpaid legal fees" in its brief, however, nothing in the record reflects such a filing was made prior to trial. It appears defendant only moved to dismiss plaintiff's complaint pre-trial, which again, was never adjudicated.

A-4132-23

into its account and did not reflect the payments were ever taken back out. The court further determined defendant performed the contracted work, advised plaintiff of the date by which he needed to file his appeal, and incurred expenses obtaining the transcripts for plaintiff. It concluded the total amount plaintiff paid to defendant was equal to the reasonable value of the services and expenses provided, and defendant was not entitled to any additional recovery beyond the $4,677.86 it had already received. Thus, the court dismissed plaintiff's complaint and defendant's counterclaim with prejudice.

## II.

We glean from plaintiff's brief he is arguing the trial court erred in dismissing his complaint because defendant: failed to establish it rendered legal services to plaintiff; did not return his money after it decided not to represent him on appeal because there was no binding agreement between the parties; and violated the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210. He further asserts the trial court erred by addressing defendant's counterclaim, which was raised for the first time at trial.

"Our review of a judgment following a bench trial is limited." Accounteks.Net, Inc. v. CKR L., LLP, 475 N.J. Super. 493, 503 (App. Div. 2023) (citing Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)).

A-4132-23

"[F]indings [of fact] by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). "Because a trial court 'hears the case, sees and observes the witnesses, [and] hears them testify,' it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Id. at 412 (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988) (alteration in original) (internal quotation marks omitted)).

Likewise, appellate courts defer to a trial court's evidentiary rulings absent an abuse of discretion. See Rowe v. Bell & Gossett Co., 239 N.J. 531, 551 (2019). Questions of law, however, are reviewed de novo. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Plaintiff challenges the court's finding defendant rendered legal services to him. He highlights his testimony that he never received or signed the retainer agreement and contends "there was no proof [presented to the court] of any service provided by . . . defendant." Therefore, his lawsuit should not have been dismissed with prejudice. Plaintiff additionally contests the credibility of defendant's claims at trial, requesting "an investigation into [the parties']

respective email address[es] be ordered . . . to verify/confirm the credibility of . . . defendant's trial testimony."

The trial court found plaintiff paid a total of $4,677.86 to defendant for legal fees and costs associated with defendant obtaining and reviewing the trial transcripts for plaintiff. It determined defendant, in fact, provided legal services including reviewing plaintiff's transcripts, drafting emails to plaintiff, and providing its opinion on the viability of plaintiff's appeal. The court concluded the reasonable value of those services was equal to the initial $2,250 retainer payment plaintiff made to defendant.

Although the court credited plaintiff's argument there was no signed agreement between the parties, it nonetheless found "there was an agreement . . . and a meeting of the minds," such that plaintiff would be responsible to pay defendant for the legal services it rendered, coupled with the cost of the trial transcript. Moreover, the court believed plaintiff's testimony he paid defendant for the services and rejected defendant's claim it did not receive the funds because plaintiff initiated the three chargebacks. We conclude the trial court's findings were amply supported by the evidence in the record, and we discern no basis to disturb the court's credibility findings.

A-4132-23

Plaintiff next argues the trial court committed reversible error by entertaining defendant's counterclaim when defendant first raised this claim at trial. By considering defendant's counterclaim, plaintiff contends the court "misappl[ied] legal precedent to purposely manipulate/interfere [with] the credibility of [his] lawsuit." He contends he "perceived" the court's action as "biased."

In Special Civil Part actions, a defendant must file an answer, "including therein any counterclaim[,] within [thirty-five] days after completion of service." R. 6:3-1. Based on the record before us, it does not appear defendant properly filed a counterclaim. Nevertheless, even if the trial court erred in addressing the purported counterclaim, it was not reversible error because plaintiff did not suffer an unjust result as the court ultimately dismissed defendant's counterclaim with prejudice, thus finding in favor of plaintiff. R. 2:10-2.

Raised for the first time on appeal, plaintiff makes a conclusory argument that defendant violated the CFA by contacting his bank without his consent and falsely representing the parties entered into a retainer agreement to defeat his claims for refunds. It is axiomatic that we "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a

presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959), certif. denied, 31 N.J. 554 (1960)); see also J.K. v. N.J. State Parole Bd., 247 N.J. 120, 138 n.6 (2021). We decline to address plaintiff's CFA argument because it neither implicates the trial court's jurisdiction nor concerns a matter of great public interest.

To the extent we have not specifically addressed any remaining arguments raised by plaintiff, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-4132-23